# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

AUTO-OWNERS INSURANCE
COMPANY and SOUTHERN-
OWNERS INSURANCE
COMPANY,

        Plaintiffs,

v.                                        Case No. 5:22-cv-423-JA-PRL

KIMBERLY ROYAL, STEPHAN
DANIEL BUFORD, ALAN
BUFORD, and BUFORD
ENTERPRISES, LLC,

        Defendants.

## ORDER

This declaratory judgment action is before the Court on the motion for summary judgment (Doc. 42) filed by Plaintiffs, Auto-Owners Insurance Company and Southern-Owners Insurance Company, Defendant Kimberly Royal's response (Doc. 51), and Plaintiffs' reply (Doc. 54). Having reviewed the parties' submissions, the Court will grant the motion in part and deny it in part.

## I.    BACKGROUND

On October 14, 2020, around 1:20 PM, Defendant Stephan Daniel Buford (Stephan) was driving his pickup truck when it collided with a sedan driven by Courtney Royal (Courtney). (Doc. 42 at 3–4; Doc. 51 at 3–4). As a result of the

collision, Courtney died. (Doc. 42 at 4; Doc. 51 at 4). On September 30, 2021, Stephan was charged with driving under the influence (DUI) manslaughter for Courtney's death and with DUI property damage related to the collision. (*See* Doc. 51-3). *See* Fla. Stat. § 316.193(3)(c)1, 3a.

In February 2022, Kimberly Royal (Royal), as the personal representative of Courtney's estate, filed a wrongful death action in state court (case number 2022-CA-000071 in the Circuit Court, Fifth Judicial Circuit, in and for Sumter County, Florida) alleging that Stephan caused the collision by negligently and carelessly operating and maintaining his pickup truck. (Doc. 1-3; Doc. 51-1 at 1; Doc. 42 at 4; Doc. 51 at 4). In the state-court action, Royal seeks to hold Stephan directly liable and Defendant Buford Enterprises, LLC, vicariously liable for Stephan's conduct. (*See* Doc. 51-1). Stephan's father, Defendant Alan Buford (Alan), was initially named as a defendant in the state-court action, (*see* Doc. 1-3), but was dropped in the amended complaint, (*see* Doc. 51-1).

On the date of the collision, Stephan was an authorized member of Buford Enterprises, which was managed by Alan. (Doc. 42 at 3–4; Doc. 51 at 3–4). And on that date, Southern-Owners insured Buford Enterprises under a commercial general liability (CGL) policy, (Doc. 42-1 at 72), and Auto-Owners insured Buford Enterprises under a commercial auto policy, (*id.* at 12). Additionally, Stephan and his pickup truck were insured through Stephan's personal auto insurance policy issued by Progressive Select Insurance Company. (*Id.* at 122).

2

On October 21, 2020, Progressive tendered the "$10,000 per person bodily injury liability limit" to Royal, as the personal representative of Courtney's estate, "in exchange for a release of the wrongful death claim(s) arising out of" the collision. (Doc. 57-2 at 1). Progressive also asked to be notified of "any claims for property damage as a result of" the collision in light of the "separate property damage liability coverage." (*Id.*). On March 31, 2022, in a Statement Under Oath, *see* Fla. Stat. § 627.4137, Progressive declared: "There are no coverage issues at this time[;] however, Progressive reserves the right to amend this [p]olicy [d]isclosure pending our further investigation." (Doc. 42-1 at 122).

In September 2022, Auto-Owners and Southern-Owners filed this declaratory judgment action seeking declarations that they have no duty to defend or indemnify Alan, Stephan, or Buford Enterprises in the wrongful death action filed by Royal. (Doc. 1 ¶¶ 21, 52–62; *accord* Doc. 7 ¶¶ 21, 58–62). The operative amended complaint contains two counts: Count I concerns the Auto-Owners commercial auto policy, and Count II concerns the Southern-Owners CGL policy. (Doc. 7 ¶¶ 52–62). Only Royal has appeared in this case. (*See* Doc. 11). Defaults have been entered against Alan, Stephan, and Buford Enterprises. (Docs. 34, 35, & 48). Plaintiffs now seek summary judgment regarding their duties to defend and indemnify.

## II. LEGAL STANDARDS

"The [C]ourt shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* The movant "bears the initial responsibility of informing the district court of the basis for its motion" and "identifying those portions" of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant demonstrates the absence of a genuine issue of material fact, "[t]he burden then shifts to the non[]moving party" to "present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). To satisfy its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In deciding whether a genuine dispute of material fact exists, the Court views the evidence and draws all factual inferences in the light most favorable to the nonmoving party and likewise resolves any reasonable doubts in favor of the nonmoving party. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007).

## III. DISCUSSION

Auto-Owners and Southern-Owners move for summary judgment as to

4

their duties to defend and to indemnify. But the duty-to-indemnify claims are not ripe because the state-court action is ongoing. *See Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 770 (11th Cir. 2019) (holding that an insurance company's duty to indemnify a defendant in a state-court action "is not ripe for adjudication until the underlying lawsuit is resolved"); *see also Am. Fid. & Cas. Co. v. Pa. Threshermen & Farmers' Mut. Cas. Ins. Co.*, 280 F.2d 453, 457–58, 461 (5th Cir. 1960). Accordingly, the Court will dismiss the duty-to-indemnify claims as unripe. *See Mid-Continent Cas. Co.*, 766 F. App'x at 769. As for the duty-to-defend claims, because Alan has been dropped as a defendant in the wrongful death action, the claims regarding the duty to defend him will be dismissed as moot. *See Pac. Ins. Co. v. Gen. Dev. Corp.*, 28 F.3d 1093, 1096 (11th Cir. 1994). With respect to the remaining duty-to-defend claims, Auto-Owners and Southern-Owners move for summary judgment on Counts I and II, respectively, (*see* Doc. 42), and the Court discusses these counts in turn.

### A. Auto-Owners (Count I)

Royal concedes that the commercial auto policy does not apply. (Doc. 51 at 10–11). Thus, for the reasons explained in its motion, (Doc. 42 at 9–11), Auto-Owners is entitled to summary judgment on Count I as to its duty to defend.

### B. Southern-Owners (Count II)

In this diversity suit, the Court applies the substantive law of Florida as

5

the forum state. *See S.-Owners Ins. Co. v. Easdon Rhodes & Assocs. LLC*, 872 F.3d 1161, 1164 (11th Cir. 2017). "In Florida, the terms used in an insurance contract are given their ordinary meaning, and the policy must be construed as a whole 'to give every provision its full meaning and operative effect.'" *Id.* (quoting *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)); *see also Walls v. S. Owners Ins. Co.*, 321 So. 3d 856, 858 (Fla. 1st DCA 2021) (applying the plain meaning of undefined terms in an insurance policy absent a genuine ambiguity in meaning). "[T]he policy should receive a reasonable, practical[,] and sensible interpretation consistent with the intent of the parties . . . ." *Gen. Accident Fire & Life Assurance Corp. v. Liberty Mut. Ins. Co.*, 260 So. 2d 249, 253 (Fla. 4th DCA 1972). "An unambiguous policy provision is 'enforced according to its terms whether it is a basic policy provision or an exclusionary provision.'" *Easdon Rhodes*, 872 F.3d at 1164 (quoting *Hagen v. Aetna Cas. & Sur. Co.*, 675 So. 2d 963, 965 (Fla. 5th DCA 1996)).

The CGL policy generally excludes auto coverage, (Doc. 42-1 at 95), but contains an auto endorsement that extends coverage for automobile-related bodily-injury and property-damage liability, "but only if you do not have any other insurance available to you which affords the same or similar coverage," (*id.* at 83). The policy defines "you" as "the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under th[e] policy." (*Id.* at 92). Buford Enterprises is the only insured

shown on the policy's Declarations page. (*Id.* at 72). The auto endorsement defines "an insured" to include "[y]ou" and "[y]our members if you are designated in the Declarations as a limited liability company." (*Id.* at 85). The Declarations page designates Buford Enterprises as a "[l]imited [l]iab[ility] [c]orp[oration]." (*Id.* at 72).

The Progressive policy provides bodily-injury limits of $10,000 per person and $20,000 per accident. (*Id.* at 122). It covers bodily injury and property damage "for which an insured person becomes legally responsible because of an accident," and it defines "insured person" to include not only Stephan but also an "organization with respect only to vicarious liability for [Stephan's] acts or omissions." (Doc. 1-5 at 6 (emphasis omitted)).[1] Additionally, the Progressive policy contains a criminality exclusion for "bodily injury or property damage caused by, or reasonably expected to result from, a criminal act or omission, excluding moving traffic violations, of any insured person." (*Id.* (emphasis omitted)). "This exclusion applies regardless of whether th[e] insured person is actually charged with, or convicted of, a crime." (*Id.* (emphasis omitted)).

---

[1] The Progressive policy uses the word "person" to refer to a natural person as distinguished from an organization. (*See, e.g.,* Doc. 1-5 at 6 (giving "person" and "organization" as alternatives)). The definition of "insured person" includes certain categories of natural persons, as well as certain "'[a]dditional [i]nterest[s]' shown on the declarations page." (*Id.* (emphasis omitted)). There is no record evidence that Buford Enterprises is listed as an additional interest on the declarations page. Accordingly, because Buford Enterprises is an "organization" and not a "person," the only way in which it may be an "insured person" for the policy is as an "organization with respect only to vicarious liability for [Stephan's] acts or omissions." (*Id.*).

7

Southern-Owners argues that the auto endorsement of the CGL policy does not apply because the Progressive policy affords similar coverage. (Doc. 42 at 11–19). Southern-Owners reasons that "the Progressive policy affords protection for Steph[a]n," (*id.* at 16), who "is within" the auto endorsement's "definition of 'you'" because he "was a member of Buford Enterprises" on the date of the collision, (*id.* at 6–7). Royal responds that the auto endorsement applies because the Progressive policy covers Stephan—not Buford Enterprises—and because the Progressive policy's criminality exclusion eliminates coverage altogether. (Doc. 51 at 11–20). The Court agrees with Southern-Owners's conclusion, though not with all its reasoning.[2]

The CGL policy's auto endorsement provides that it does not apply "if you . . . have any other insurance available to you which affords the same or similar coverage." (Doc. 42-1 at 83). Here, "you" is defined as "the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under th[e] policy." (*Id.* at 92). Buford Enterprises is the Named Insured shown in the Declarations. (*See id.* at 72; Doc. 42 at 5; Doc. 51 at 3, 5, 7, 13 & n.2, 16, 18; Doc. 54 at 4). The policy also discusses otherwise "qualify[ing] as a Named Insured," (Doc. 42-1 at 89), but Southern-

---

[2] Southern-Owners comes closer to the mark in its reply than in its motion, as when it states in its reply that "[j]ust because the additional coverage is not found in a policy issued to Buford Enterprises, LLC[,] does not mean that the policy issued to Steph[a]n Buford does not provide protection to the company as well." (Doc. 54 at 6).

8

Owners does not explain how Stephan qualifies. (*See* Docs. 42 & 54). Instead, Southern-Owners seemingly builds its argument from the flawed premise that qualifying as an insured—a condition that Stephan might satisfy—equates to qualifying as a Named Insured. (*See* Doc. 42 at 6–7, 16; *see also* Doc. 51 at 18–19). This is incorrect: "Named Insured" and "an insured" are distinct terms with different meanings in the policy. *See S.-Owners Ins. Co. v. Wiggins*, No. 3:10-cv-390-J-37MCR, 2012 U.S. Dist. LEXIS 15877, at *11–13 (M.D. Fla. Feb. 9, 2012) (noting the difference between the terms). Because Southern-Owners does not explain how Stephan qualifies as a Named Insured—and it does not appear that he does—the Court considers only Buford Enterprises to fall within the definition of "you" in the auto endorsement. Accordingly, the CGL policy's auto endorsement does not provide coverage for Buford Enterprises or Stephan if Buford Enterprises—not Stephan—has "any other insurance available to [it] which affords the same or similar coverage." (Doc. 42-1 at 83).

That said, the Progressive policy affords the necessary coverage to Buford Enterprises for the auto endorsement of the CGL policy not to apply here. As mentioned above, the Progressive policy covers bodily injury and property damage "for which an insured person becomes legally responsible because of an accident" and defines "insured person" to include an "organization with respect only to vicarious liability for [Stephan's] acts or omissions." (Doc. 1-5 at 6 (emphasis omitted)). Thus, the Progressive policy covers Buford Enterprises to

the extent that Buford Enterprises "becomes legally responsible because of an accident" under a theory of "vicarious liability for [Stephan's] acts or omissions." (*Id.*). In the wrongful death action, Royal sued Buford Enterprises under just such a theory of vicarious liability. (Doc. 51-1 ¶ 25). Accordingly, through the Progressive policy, Buford Enterprises has "other insurance available to [it] which affords the same or similar coverage." (Doc. 42-1 at 83).

*Walls* is particularly instructive on this point. In that case, as here, an employee of an organization was involved in a car collision that resulted in a woman's death, the employee had a personal auto insurance policy for bodily injury and property damage, and the organization had a CGL policy with Southern-Owners. *Walls*, 321 So. 3d at 858. After the woman's estate obtained a judgment against the organization in Florida court, the estate sought the policy limit of the CGL policy from Southern-Owners, but Southern-Owners denied coverage. *Id.* The estate challenged the coverage denial, and the trial court entered summary judgment in favor of Southern-Owners. *Id.* The trial court concluded that the CGL policy did not provide coverage to the organization because the personal auto insurance policy afforded the organization similar coverage to the CGL policy. *Id.* The appellate court affirmed. *Id.* Examining the identical "similar coverage" language at issue in this case, *id.*, the appellate court concluded that the CGL policy did not apply because both the personal auto insurance policy and the CGL policy "would have provided [the

organization] with similar coverage" for the car collision, *id.* at 860. "[T]he plain meaning of similar coverage is insurance coverage that covers a similar risk," the appellate court explained, "[a]nd the policies here both covered property damage and bodily injury resulting from the employee's operation of the motor vehicle." *Id.* So too here. *See also Easdon Rhodes*, 872 F.3d 1161 (affirming summary judgment for Southern-Owners under similar circumstances).

Finally, Royal contends that the Progressive policy does not afford coverage because it contains a criminality exclusion. (Doc. 51 at 19–20). However, that exclusion does not apply when the criminal conduct encompasses "moving traffic violations." (Doc. 1-5 at 6). The policy does not define "moving traffic violations," (*see id. passim*), so the Court turns to the dictionary, *see Brill v. Indianapolis Life Ins. Co.*, 784 F.2d 1511, 1513 (11th Cir. 1986) ("In construing terms appearing in insurance policies, Florida courts commonly adopt the plain meaning of words contained in legal and non-legal dictionaries."). The *Oxford English Dictionary* defines "moving violation" in the context of "traffic laws" as including "drink-driving," *Moving Violation*, Oxford English Dictionary (online ed.) (last visited July 3, 2024), which is a synonym for "DUI," *compare Drink-Driving*, Oxford English Dictionary (online ed.) (last visited July 3, 2024), *with DUI*, Oxford English Dictionary (online ed.) (last visited July 3, 2024). Thus, under the Progressive policy, "moving traffic violations" include DUI offenses like Stephan's, (*see* Doc. 51-3), meaning that

11

the criminality exclusion does not apply. It is worth noting that Progressive's Statement Under Oath, which confirmed coverage six months after Stephan's DUI charges, (*see id.*; Doc. 42-1 at 122), indicates that Progressive understood the exclusion not to apply.

Because the Progressive policy covers Buford Enterprises, the auto endorsement of the CGL policy does not apply. Southern-Owners is therefore entitled to summary judgment on Count II regarding its duty to defend.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Plaintiffs' motion for summary judgment (Doc. 42) is **GRANTED in part and DENIED in part**. The motion is **granted** as to the duty-to-defend claims regarding Stephan and Buford Enterprises but is otherwise **denied**. The duty-to-defend claims regarding Alan are **DISMISSED as moot**. The duty-to-indemnify claims are **DISMISSED as unripe**. The Clerk shall enter a judgment declaring that under Auto-Owners's commercial auto policy (policy number 52-547-701-00) and Southern-Owners's CGL policy (policy number 202382-78547701-20), Plaintiffs, Auto-Owners Insurance Company and Southern-Owners Insurance Company, do not owe duties to defend Stephan Daniel Buford or Buford Enterprises, LLC, in the underlying wrongful death action (case number 2022-CA-000071 in the Circuit Court, Fifth Judicial Circuit, in and for Sumter County, Florida). Thereafter, the Clerk shall close this case.

**DONE** and **ORDERED** on July 3rd, 2024.

                                                JOHN ANTOON II
                                        United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties